# EXHIBIT A

Debra Steel Sturmer, Esq. (CSB #105276)
Sara P. Douglass, Esq. (CSB #324400)
LERCH STURMER LLP
One Sansome Street, Suite 740
San Francisco, California 94104
Telephone: (415) 217-6341
Sturmer Cell: (415) 518-7358
dsturmer@lerchsturmer.com
sdouglass@lerchsturmer.com

Attorneys for Plaintiff,
BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY

Electronically FILED by
Superior Court of California,
County of Los Angeles
1/21/2025 4:08 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By J. Mercer, Deputy Clerk

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## FOR THE COUNTY OF LOS ANGELES – LONG BEACH DIVISION
## UNLIMITED JURISDICTION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY, a public entity<br><br>Plaintiff,<br><br>v.<br><br>LEXINGTON INSURANCE COMPANY, a Delaware Corporation; and Does 1 through 10,<br><br>Defendants. | Case No. 25LBCV00133<br><br>**COMPLAINT & REQUEST FOR JURY TRIAL**<br><br>1. Breach of Insurance Contract<br>2. Breach of the Covenant of Good Faith and Fair Dealing<br>3. Declaratory Relief |

Plaintiff BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY alleges as follows:

### FACTUAL BACKGROUND

1. This action arises out of Defendant LEXINGTON INSURANCE COMPANY'S ("Defendant" or "Insurer") breaches of its contractual duties to provide TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY ("Plaintiff" or "CSU") coverage under its Public Entity Property Insurance Program ("PEPIP") policy ("Policy") for costs of permanent stabilization of a hillside located on the campus of California Polytechnic State University, San Luis Obispo ("Cal Poly"). The hillside was impacted by a landslide on February 18, 2017 during/following an atmospheric weather event ("the Fremont Hall Landslide"). Cal Poly's Fremont Hall dormitory is located on this hillside and was rendered uninhabitable for its students because of the landslide.

2. The claim for this damage was tendered to Defendant by the California State University Risk Management Authority ("CSURMA") on behalf of its member institution, CSU/Cal Poly. Defendant issued payment in connection with the proof of loss submitted with respect to certain preliminary repairs that it agreed were deemed "winterization" efforts to temporarily arrest the movement of the slide while a permanent solution could be developed by Cal Poly's retained engineering firm.

3. Cal Poly's engineer advised that notwithstanding the temporary measures taken to reduce the amount of surface water entering the slide mass, and the partial excavation of the toe and head of the slide, the slide had only been temporarily arrested, and Fremont Hall was not safe for occupancy. It was determined that the only means to repair the damage to Fremont Hall and to restore it to its prior function as a student dormitory was to undertake the permanent stabilization of the hillside. This restoration effort and related costs have totaled in excess of $20,000,000.

4. Insurer communicated its position to CSU that the payments it issued for temporary repair costs are without precedent to future claims for coverage for winterization, or other temporary land stabilization costs. However, Insurer did not reserve its rights to seek reimbursement of these previously paid costs.

5. The Insurer asserts that CSU's claim related to the hillside is excluded under its policy exclusion for "Land, (including land on which covered property is located), and land values (except athletic fields, landscaping, artificial turf, sand traps, tees and greens)." It is Defendant's position that the land upon which the landslide emanated is not covered property, and therefore it has no obligation to pay the costs of repair of the land. Insurer's position is incorrect because CSU is seeking coverage for damage to a covered property – Fremont Hall Dormitory. *It is not seeking coverage for damage to land.* The cost of permanent repair to the hillside is necessary to repair covered property such that Fremont Hall is rendered safe for the occupancy of CSU's students and returned to the condition it was in prior to February 18, 2017. In addition, the Insurer has failed to pay other portions of the claim unrelated to the hillside repair which were submitted by CSU and covered under its policy.

6. By denying CSU coverage, Insurer is in breach of the Policy and has engaged in bad faith conduct in the course of committing this breach. CSU brings this breach of insurance contract, bad faith, and declaratory relief action to seek damages and adjudication that Defendant must provide coverage for the damage to its property covered under the Policy, Fremont Hall and damages for breach of the covenant of good faith and fair dealing.

## THE PARTIES

7. Plaintiff CSU is the governing board of the California State University system. CSU is the State of California acting in its higher education capacity, with its principal place of business located in Long Beach, California. CSU's twenty-three campuses include California Polytechnic State University, San Luis Obispo, which is located in San Luis Obispo, California.

8. Plaintiff is informed and believes that Defendant is an insurance company issuing policies of insurance to California entities on the surplus line market through surplus lines brokers, and is domiciled in the State of Delaware and headquartered in the State of Massachusetts. Plaintiff does not know the true names of defendants sued herein as Doe 1 through 10 and therefore reserves the right to amend this Complaint when their true identities are known, and are collectively referred to herein as Insurer.

9. The Parties have entered into an agreement tolling the statute of limitations that expires on January 22, 2025.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action because the amount in controversy in this case exceeds $35,000.

11. Venue is proper in the Long Beach division of this Court because the contract to be enforced was made, entered into, to be performed in the County of Los Angeles and was breached in this county.

## THE POLICY ISSUED TO CSU

12. In exchange for its premium payment, Insurer issued a Public Entity Property Insurance Program Policy, Form No. 12, through Alliant Property Insurance Program to CSU, bearing Policy No. 017471590/03 (Dec 05) – 0060, with a policy period from July 1, 2016 – July 1, 2017.

13. The Policy is an All Risk Policy, meaning the Insured can seek compensation for any event that the insurance contract has not explicitly ruled out as being covered. There is no earth movement or landslide exclusion in the Policy. Damages caused by a landslide are not excluded by the Policy, and the Policy covers landslides as a covered peril. Under the Policy, a covered peril that caused a covered loss is *not excluded.*

## **RELEVANT POLICY TERMS**

**SECTION II. PROPERTY DAMAGE**

**A. COVERAGE**

Subject to the terms, conditions and exclusions hereinafter contained, this Policy insures all property of every description both real and personal (including improvements, betterments and remodeling), of the Named Insured, or property of others in the care, custody or control of the Named Insured, for which the Named Insured is liable, or under the obligation to insure.

**B. EXTENSIONS OF COVERAGE**

All coverage extensions are subject to the terms, conditions and exclusions of the policy except insofar as they are explicitly providing additional coverage.

**17. PROTECTION AND PRESERVATION OF PROPERTY**

In the event of loss likely to be covered by this Policy, the Named Insured shall endeavor to protect covered property from further damage and shall separate the damaged and undamaged personal property and store in the best possible order, and shall furnish a complete inventory of the destroyed, damaged and undamaged property to the Insurer.

In case of actual or imminent physical loss or damage of the type insured against by this Policy, the expenses incurred by the Named Insured in taking reasonable and necessary actions for the temporary protection and preservation of property insured hereunder shall be added to the total physical loss or damage otherwise recoverable under the Policy and be subject to the applicable deductible and without increase in the limit provisions contained in this Policy.

**20. MISCELLANEOUS UNNAMED LOCATIONS**

Coverage is extended to include property at locations (including buildings or structures, owned, occupied or which the Named Insured is obligated to maintain insurance) located within the territorial limitations set by this policy.

**C. PROPERTY NOT COVERED**

Except as for that which may be provided as an Extension of Coverage, this policy does not cover:

   3. Land (including land on which covered property is located), and land values (except athletic fields, landscaping, artificial turf, sand traps, tees and greens).

**D. LOSS PAYMENT BASIS / VALUATION**

In case of loss to property of a Named Insured covered hereunder, the basis of adjustment shall be as of the time and place of loss as follows:

   1. On all real and personal property, including property of others in the care or control of the Named Insured at the replacement cost (as defined below) at the time of the loss without deduction for depreciation. If property is not replaced within a reasonable period of time, then the actual cash value shall apply.

   2. On improvements and betterments at the replacement cost at time of loss without deduction for depreciation ...

**SECTION III. BUSINESS INTERRUPTION, EXTRA EXPENSE, RENTAL INCOME, TAX INTERRUPTION AND TUITION INCOME**

**A. COVERAGE**

   **1. BUSINESS INTERRUPTION**

   Against loss resulting directly from interruption of business, services or rental value caused by direct physical loss or damage, as covered by this Policy to real and/or personal property insured by this Policy, occurring during the term of this Policy.

   In the event of such loss or damage the Company shall be liable for the actual loss sustained by the Named Insured for gross earnings as defined herein and rental value as defined herein resulting from such interruption of business, services, or rental value; less all charges and expenses which do not necessarily continue during the period of restoration. Due consideration shall be given to the continuation of normal charges and expenses including payroll expenses to the extent necessary to resume operations of the Named Insured with the same quality of service which existed immediately preceding the loss.

   **2. EXTRA EXPENSE**

   This Policy is extended to cover the necessary and reasonable extra expenses occurring during the term of this Policy at any location as hereinafter defined, incurred by the Named Insured in order to continue as nearly as practicable the normal operation of the Named Insured's business following damage to or destruction of covered property by a covered peril which is on premises owned, leased or occupied by the Named Insured. In the event of such damage or destruction, the Company shall be liable for such necessary extra expense incurred for only such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property as has been damaged or destroyed commencing with the date of

    damage or destruction and not limited by the date of expiration of this Policy (hereinafter referred to as the period of restoration).

**SECTION IV. GENERAL CONDITIONS**

**A. PERILS COVERED**

Subject to the terms, conditions and exclusions stated elsewhere herein, this Policy provides insurance against all risk of direct physical loss or damage occurring during the period of this Policy.

### INSURER BREACHED ITS DUTY TO REIMBURSE CSU

14. CSU gave timely notice to Insurer of its claim for incurred property damage, extra expenses, and loss of business income as a result of the Fremont Hall Landslide.

15. Insurer issued partial payment in connection with the proof of loss submitted by CSU with respect to certain preliminary repairs that Insurer deemed "winterization" efforts to temporarily arrest the movement of the slide while a permanent solution could be developed by Cal Poly's retained engineering firm.

16. Cal Poly's engineering firm advised that notwithstanding the temporary measures taken to reduce the amount of surface water entering the slide mass, and the partial excavation of the toe and head of the slide, the slide had only been temporarily arrested, and Fremont Hall was not safe for occupancy. In fact, there has been subsequent earth movement impacting Fremont Hall since the February 2017 landslide.

17. Based on the engineering advice, it was determined that the only means to repair the damage to Fremont Hall and to restore it to its prior function as a student dormitory was to undertake the permanent stabilization of the hillside.

18. Insurer wrongfully refused to pay the costs for permanent stabilization of the hillside based upon the policy exclusion for "Land, including land on which covered property is located), and land values (except athletic fields, landscaping, sand traps, tees and greens)." Insurer wrongfully asserted that because the land upon which the landslide emanated is not covered property, it has no obligation to pay the costs to repair the land, notwithstanding that such repair is the only means by which the damage to covered property (Fremont Hall) can be repaired and the covered property restored to its use as a dormitory.

19. Insurer communicated that it would consider all of the measures implemented in February, March and/or April of 2017 as qualifying for coverage under B. EXTENSIONS OF COVERAGE, item 17. PROTECTION AND PRESERVATION OF PROPERTY. However, Insurer further advised that "[b]ecause the Land Exclusion does not distinguish between permanent and temporary repair of land, Lexington has very serious concerns that the latter also falls within the [Land] exclusion. By agreeing to pay for winterization in this case, Lexington is not admitting liability for such work."

20. Contrary to Insurer's basis for denying coverage for the costs to repair Fremont Hall measured by the costs to stabilize the hillside, the Policy does not contain a provision stating that the land exclusion applies where the repair to land is necessary to restore covered property to its prior use. The Policy is an All Risk policy. There is no earth movement or landslide exclusion, and damage caused by a landslide is not specifically excluded by the policy.

21. The policy includes landslides as a covered peril, and a covered peril that caused a covered loss is not excluded.

22. CSU is not seeking coverage because of damage to the subject hillside itself. CSU concedes that pure damage to land alone (i.e., without impact to covered property) would fall under the Policy's land exclusion. Rather, CSU is seeking coverage for the damage to the dormitory and its water system, which are covered property under the Policy. Part of this damage repair requires stabilization of the hillside.

23. CSU is informed and believes and thereon alleges that Insurer has an obligation to provide coverage for the costs associated with the restoration of the hillside upon which Fremont Hall, a covered property under the Policy, is located. As a result of Insurer's failure to do so, CSU has been forced to incur these costs itself, notwithstanding its Policy from Insurer.

24. By refusing to pay CSU's costs associated with the restoration efforts of Fremont Hall, and other claims for loss submitted to Insurer which have not been reimbursed, Insurer has breached the duty to reimburse CSU for its losses afforded by Policy No. 017471590/03. Insurer's breach of the insurance contract has caused damage to CSU, including, but not limited to, monetary damages

associated with property damage, extra expense, business interruption and other losses covered under the Policy.

25. CSU is entrusted to responsibly manage the property and assets within its control. CSU obtained insurance to avoid financial risks such as the impacts from the subject landslide. As a result of Insurer's failure to fulfil its obligations under the Policy, CSU has paid for repairs and has sustained losses that it should not have suffered.

### INSURER'S BAD FAITH DENIAL OF COVERAGE

26. In denying CSU the coverage for the Fremont Hall Landslide to which it is entitled, Insurer has acted in bad faith. Insurer has acted unreasonably and in bad faith by adopting an unreasonably narrow, constrained interpretation of the Policy. There is no language in the Policy that excludes the costs of repairing land as an item of damage necessary to the repair of covered property in order to restore that covered property to its original use. The Policy should be subject to CSU's reasonable expectation of coverage that costs to repair land to remediate the damage to covered property is covered without regard to the fact that the land itself is not covered property.

### FIRST CAUSE OF ACTION

### BREACH OF CONTRACT – DUTY TO REIMBURSE COSTS OF REPAIR

27. CSU incorporates herein by reference each of the foregoing and each of the subsequent paragraphs of this Complaint.

28. CSU has performed all covenants and conditions required under Policy No. 017471590/03. All premiums due under this policy have been paid in full.

29. By refusing to honor its contractual obligations under the Policy to cover CSU's costs for the permanent stabilization of the hillside and the restoration of Fremont Hall as a habitable building, and other claimed losses submitted which remain unpaid, Insurer has breached its duty to reimburse CSU for its losses. This breach is ongoing.

30. As a direct and proximate result of Insurer's breach of its contractual duties, CSU has incurred costs and expenses totaling over $20,000,000, which is continuing. CSU seeks damages according to proof at trial.

## SECOND CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

31. CSU incorporates herein by reference each of the foregoing and each of the subsequent paragraphs of this Complaint.

32. Implied in every contract of insurance is a covenant of good faith and fair dealing which obligates insurers, including Insurer, to act at all times in good faith towards their insureds, including CSU.

33. CSU reasonably expected that Insurer would deal with CSU fairly, equitably, and in good faith, and would fulfill its contractual duty to protect CSU by providing coverage for its damaged property covered under the Policy.

34. CSU's expectations were brought about and intended by Insurer as a result of, *inter alia*, the contractual language in the Policy, and by representations made by Insurer to CSU with respect to the scope of the coverage of the Policy.

35. Insurer has breached its obligation to act in good faith by:

  a. Failing to act in accordance with the law and its duties to CSU as set forth herein.

  b. Relying on an unreasonably narrow, constrained interpretation of the Policy so as to deny CSU the coverage it is entitled to.

  c. Compelling CSU to seek legal redress to obtain benefits to which CSU is entitled under the Policy.

36. The acts and omissions of Insurer set forth herein were committed in bad faith, intentionally and/or with conscious and reckless disregard of CSU's rights by denying the very benefits which CSU bargained and paid substantial premiums for.

37. CSU alleges that Insurer's motivation in failing to act in good faith by providing the coverage CSU is entitled to is to avoid its obligation to reimburse CSU for sums that it has paid out of necessity in order to repair covered property and restore Fremont Hall to its previous, habitable condition. CSU alleges Insurer's coverage position in this matter is designed to unfairly maximize its own profits at CSU's expense.

38. As a direct and proximate result of Insurer's breach of the implied covenant of good faith and fair dealing contained in the Policy, CSU has suffered, and continues to suffer, general and consequential damages, in an amount to be proven at trial.

39. In addition to the damages alleged in this Complaint, CSU's damages include the costs, expenses, and attorneys' fees incurred by CSU in this litigation to obtain the contractual benefits to which CSU is entitled under the Policy.

### THIRD CAUSE OF ACTION
### FOR DECLARATORY RELIEF AND JUDGMENT

40. CSU incorporates herein by reference each of the foregoing and each subsequent paragraphs of this Complaint.

41. An actual and justiciable controversy exists between CSU and Insurer regarding Insurer's duties and obligations to pay CSU's costs for the permanent stabilization of the hillside and the restoration of Fremont Hall.

42. Alternatively, CSU seeks a judicial declaration regarding the scope of coverage available to CSU under the Policy issued by Insurer.

43. A judicial declaration is necessary and appropriate at this time under the circumstances in order that CSU and Insurer may ascertain their duties, rights, and responsibilities pursuant to the Policy issued by Insurer to CSU.

WHEREFORE, PLAINTIFF prays for judgment as follows:

1. For general, incidental, and consequential damages according to proof at trial.
2. For judicial declarations that:
   a. The land exclusion of the Policy on which Insurer bases its denial of coverage does not apply to CSU's claims arising from the 2017 landslide, including, *inter alia* damage to Fremont Hall.
   b. Insurer is obligated to provide coverage to CSU pursuant to the Policy.
3. For CSU's attorneys' fees and costs incurred herein in establishing Insurer's coverage obligations under the Policy; and,
4. For such other relief as the Court deems just and proper.

| | | |
|---|---|---|
| 1 | DATED: January 21, 2025 | LERCH STURMER LLP |
| 2 | | |
| 3 | | By: *[signature]* |
| 4 | | Debra Steel Sturmer<br>Sara P. Douglass |
| 5 | | Attorneys for Plaintiff BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY |

### **REQUEST FOR JURY TRIAL**

Plaintiff BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY hereby respectfully requests a jury trial.

| | | |
|---|---|---|
| DATED: January 21, 2025 | | LERCH STURMER LLP |
| | | By: *[signature]* |
| | | Debra Steel Sturmer<br>Sara P. Douglass<br>Attorneys for Plaintiff BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY |